

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HBK MASTER FUND L.P., et al.,<br><br>                           Plaintiffs,<br>v.<br>MAXLINEAR, INC., et al.,<br><br>                           Defendants. | Case No.: 3:24-cv-01033-CAB-VET<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[ECF No. 24] |

This lawsuit largely mirrors Case No. 23-CV-01607-CAB-VET (hereinafter, "*Water Island*") which involved Securities Exchange Act claims arising from the same facts and circumstances as the present case. On August 28, 2024 the Court dismissed the *Water Island* plaintiffs' lawsuit against identical Defendants for want of statutory standing under Fed. R. Civ. P. 12(b)(6). Plaintiffs' Section 10(b) and Section 20(a) claims are dismissed with leave to amend in light of the Ninth Circuit's ruling in *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1187 (9th Cir. 2024) (hereinafter, "*Lucid Motors*"). The Court dismisses Plaintiffs' Section 18 claim with leave to amend for failure to state a claim.

## I.    PROCEDURAL BACKGROUND

Plaintiffs initially sought appointment as lead plaintiff in the *Water Island* class action. [*Water Island*, ECF No. 14.] That motion was denied. [*Water Island*, ECF No.

15.] Plaintiffs filed their complaint in a separate action on June 13, 2024. [ECF No. 1.] Plaintiffs allege violations of the Securities Exchange Act: two theories under Section 10(b), a derivative liability suit under Section 20(a), and a Section 18 claim. [Compl. ¶¶ 175–97.] Plaintiffs have also pleaded common law fraud claims and one state law claim pursuant to Cal. Civ. Code § 1709. [Compl. ¶¶ 206–27.]

## II.     FACTUAL ALLEGATIONS

Much of Plaintiffs' allegations parallel those pleaded in *Water Island*. The Court takes the pleaded material facts as true and construes them in the light most favorable to Plaintiffs.[1] *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). The Defendants are familiar: (1) MaxLinear, a Delaware corporation with its principal executive offices located in Carlsbad, California; (2) Defendant Kishore Seendripu, who served as MaxLinear's Chief Executive Office; and (3) Defendant Steven Litchfield, who served as Chief Financial Officer and Chief Corporate Strategy Officer. [Compl. ¶¶ 31–34.] Both individual Defendants are alleged to have made, approved, or adopted false statements that caused or maintained artificial inflation in the price of Silicon Motion Technology Corporation's ("SIMO") shares. [*Id.* ¶¶ 32–33.] SIMO is a Taiwan-based chip manufacturer and was MaxLinear's target in the proposed merger. [*Id.* ¶ 39.] All Defendants are also alleged to have participated in a fraudulent scheme affecting SIMO securities. [*Id.* ¶¶ 136–41, 175.]

Plaintiffs are HBK Master Fund L.P. and HBK Merger Strategies Master Fund. L.P. Both are incorporated in the Cayman Islands. [*Id.* ¶¶ 27–28.] Both are managed by another entity, HBK Investments L.P. [*Id.*] Plaintiffs purchased SIMO American Depository

---

[1] The Court takes judicial notice of Defendants' Exhibits 1–5 filed with their motion to dismiss: (1) the merger agreement contained in MaxLinear's Form S-4 as filed with the Securities and Exchange Commission ("SEC"), (2) the transcript from the June 6, 2023 Stifel Conference, (3) MaxLinear's Form 425 as filed with the SEC containing an excerpt from the Stifel Conference, (4) MaxLinear's Form 8-K as filed with the SEC on June 28, 2023, and (5) MaxLinear's Form 8-K as filed with the SEC on July 26, 2023. [ECF Nos. 24:4–8.] These exhibits contain facts that are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiffs incorporate each of these items in their consolidated complaint and have not contested Defendants' request for notice.

Shares ("ADSs") from June 2, 2023 through July 26, 2023.[2] [*Id.* at p.1 & ¶ 127.] Like the *Water Island* plaintiffs, Plaintiffs claim that the acquiring party, MaxLinear, committed fraud in the course of its failed combination with SIMO. [*See id.* ¶¶ 126–31.]

The gravamen of Plaintiffs' fraud theory is almost identical to the one pleaded in *Water Island*. Plaintiffs refer repeatedly to the *Water Island* complaint, in an apparent effort to incorporate it. [*See id.* ¶ 79.] Plaintiffs allege that Defendants made material misrepresentations and omissions about MaxLinear's commitment to its combination with SIMO all while secretly planning to breach the merger agreement ("Agreement"). [*See id.* ¶¶ 120–35.] By its terms, the merger required the blessing of domestic and foreign (the Chinese State Administration for Market Regulation, or "SAMR") antitrust regulators on or before August 7, 2023. [*Id.* ¶ 46; ECF No. 24-4 at 21.] According to Plaintiffs, MaxLinear's failure to obtain merger clearance would limit liabilities from the failed merger to a $160 million breakup fee. [*Id.* ¶ 55.] MaxLinear could avoid the fee entirely if it could prove that SIMO was in "material breach" of the Agreement or faced a "Material Adverse Effect" as defined by the same. [*See id.* ¶¶ 55, 57–58.] If MaxLinear terminated the deal outside of these narrow circumstances, it would face significantly greater financial penalties. [*Id.* ¶ 59.]

Plaintiffs assert that as MaxLinear awaited SAMR approval, the business case for the merger unraveled. [*Id.* ¶ 77.] Instead of terminating the merger with required penalties, Defendants hoped for SAMR's denial of antitrust clearance as a means to thwart the deal. [*See id.* ¶ 141.] When SAMR approved the merger on July 26, 2023, despite serious market uncertainty, Defendants concocted a sham breach by SIMO to avoid liabilities that MaxLinear would face from its own unilateral exit. [*See id.* ¶¶ 51–53, 86–97; *see* ECF No. 24-8 at 3.] Plaintiffs claim that Defendants did not even take "basic and rudimentary" pre-

---

[2] Plaintiffs repeatedly reference but do not specifically define the "relevant period." The Court construes the facts of the complaint in the light most favorable to the Plaintiffs and uses the date of the first and last alleged misstatements as the start and finish of the relevant period.

merger integration steps—a strategic decision that revealed Defendants' true intention to exit the merger all along. [*See id.* ¶¶ 106–07.]

The purported misstatements track *Water Island*, save for one: Plaintiffs allege that on June 2, 2023, Defendant MaxLinear, CFO Steven Litchfield, and other unidentified MaxLinear representatives participated in a webinar in which they were "directly asked whether there was conviction in the SIMO deal despite the cyclical downturn in technology in semiconductors."[3] [*Id.* ¶¶ 120–21.] "They" responded that MaxLinear remained "very interested in SIMO as an asset" and that there were "no issues with the deal and funding was committed." [*Id.* ¶ 121.] According to Plaintiffs, "MaxLinear representatives" asserted that "MaxLinear was excited about the acquisition and that the rationale for the deal was stronger than ever." [*Id.*]

Next is an alleged misrepresentation pleaded identically by the *Water Island* plaintiffs: Plaintiffs assert that on June 6, 2023, MaxLinear and Defendant Seendripu participated in a conference (the "Stifel Conference") involving 300 companies and more than 1,600 investors. [*Id.* ¶ 68.] During a so-called "fireside chat," a conference representative asked Defendant Seendripu about the merger, describing it as "one of the topics investors want to hear most about." [*Id.* ¶ 69; ECF No. 24-6 at 2.] The representative asked about "SIMO," an "update on the asset strategically," and whether SIMO was "an asset that you're very interested in acquiring." [*Id.*; ECF No. 24-6 at 2.] Defendant Seendripu responded that MaxLinear was "very, very . . . bullish[] that we can acquire the synergies that we told you all about," that the "basic rationale" for the merger "ha[d] not changed at all," and that he "believe[ed]" that SIMO was a "very strategic asset for [MaxLinear]." [*Id.* ¶ 70; ECF No. 24-6 at 2.] Commenting on a specific merger-related synergy, Defendant Seendripu indicated that "together, we bring the portfolio to make it happen." [*Id.*; ECF No. 24-6 at 2.] On June 7, 2023, MaxLinear filed a transcript excerpt containing the alleged misrepresentations with the SEC. [*Id.* ¶ 71; ECF No. 24-6.]

---

[3] There is no transcript or specific quoted misstatements related to these claimed misrepresentations.

The final alleged misrepresentation, also pleaded by the *Water Island* plaintiffs, are statements from Defendants' June 28, 2023 Form 8-K filed with the SEC confirming that "MaxLinear and SIMO re-filed [for merger clearance] under the [Hart-Scott-Rodino] Act." [*Id.* ¶¶ 134, 179; ECF No. 24-7 at 3.] Plaintiffs claim that by this point, MaxLinear had no actual commitment to the merger because it no longer constituted an attractive business proposition. [*Id.* ¶ 135.]

### III.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Section 10(b) of the Exchange Act bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)). "Section 20(a) of the Exchange Act imposes secondary liability on controlling persons involved in a primary Section 10(b) violation." *Lucid Motors,* 110 F.4th at 1184. Section 10(b) lawsuits are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

The Ninth Circuit recently explained the limits on the class of plaintiffs who may seek Section 10(b) relief. *See Lucid Motors,* 110 F.4th at 1184–85. After Plaintiffs filed this lawsuit, the Ninth Circuit clarified that Exchange Act plaintiffs must follow the "purchaser-seller rule," a "bright-line rule" that makes clear that "a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities about which the alleged

misrepresentations were made." *Lucid Motors*, 110 F.4th at 1186 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 727, 755 (1975)).

## IV. DISCUSSION

### i. Plaintiffs do Not Have Statutory Standing for their Section 10(b) and 20(a) Claims

As it did in *Water Island*, the first-order question of statutory standing resolves the 10(b) and Section 20(a) claims. Defendants challenge Plaintiffs' standing to maintain a Section 10(b) suit. [ECF No. 24 at 30.] As alleged in their complaint, Plaintiffs did not purchase MaxLinear stock during the relevant period and instead, held only the securities of the target SIMO. Defendants argue that the alleged misrepresentations were made about MaxLinear. According to Defendants, to have standing for a 10(b) lawsuit pursuant to the purchaser-seller rule, Plaintiffs must have purchased *MaxLinear* securities.

Applying the purchaser-seller rule to the relevant portions of the complaint, the dispositive issue for standing is whether the pleaded misrepresentations were made about SIMO. *Lucid Motors*, 110 F.4th at 1186. The Court finds they were not. The alleged misstatements, including the statements from the June 2, 2023 webinar, are about *MaxLinear*'s evaluation of the benefits of the merger and *MaxLinear*'s continued commitment to the merger. The purported misstatements are not about SIMO securities.

Plaintiffs argue that the statements relating to Defendants' intent to complete the merger (and its projected benefits to MaxLinear) are actually statements about SIMO securities. [ECF No. 26 at 2.] Plaintiffs' argument is best construed as a variant of the "sufficiently connected" statutory standing test which asks "whether a security is sufficiently connected to misstatement for standing purposes." *Lucid Motors*, 110 F.4th at 1186. This test is one that the Ninth Circuit expressly disavowed in *Lucid Motors* on grounds that it invited "endless case-by-case analysis." *Id.* Indeed, any "sufficient connection" is already suspect where Plaintiffs' complaint makes clear that "[a]t the time of Defendants' alleged misrepresentations, [MaxLinear] and [SIMO] were two entirely

separate companies." *Id.* at 1187. Indeed, Plaintiffs highlight the complete absence of pre-merger integration between MaxLinear and SIMO. [Compl. ¶¶ 106–07.]

The bottom line is that there is no allegation in the complaint that anyone made any representations about SIMO securities. The Ninth Circuit has set a bright-line rule that the "security" at issue must be one about which the alleged misrepresentations were made. The Ninth Circuit has imposed this rule despite the result that such a bright-line may "prevent[] some deserving plaintiffs from recovering damages." *Lucid Motors*, 110 F.4th at 1185 (quoting *Blue Chip Stamps*, 421 U.S. at 738). For that reason, Plaintiffs do not have 10(b) or Section 20(a) standing. *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024) (explaining that there is no Section 20(a) derivative liability without a primary securities law violation).

### ii. Plaintiffs Lack Statutory Standing for their Section 10(b) Scheme Liability Claim

Though proceeding under Rule 10b, scheme liability claims are distinct from a 10(b) misrepresentation/omission claim because they involve deceptive conduct. *See In re Galena Biopharma*, Inc. Sec. Litig., 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). The elements for scheme liability are: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). The scheme must "encompass [. . .] conduct beyond those misrepresentations or omissions." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011) (quoting 17 C.F.R. § 240, SEC Rules 10b-5(a) and (c)).

An open question for their scheme claim is whether Plaintiffs must clear the statutory standing rule from *Lucid Motors*. The scheme pleaded by Plaintiffs is based on the exact same alleged misrepresentation underlying their traditional 10(b) claim. The only deceptive conduct pleaded is that Defendants (including MaxLinear itself) caused MaxLinear to apply for the (statutorily required) regulatory approval of the merger and

filed a Form 8-K with the SEC.[4] [*See* Compl. ¶ 179.] But this "conduct" is simply a neutral precursor to the alleged misrepresentations contained in the public statement published by MaxLinear in its Form 8-K.

This Court holds that where the challenged conduct relies principally on an alleged misstatement to meet the elements of a scheme claim, Plaintiffs may proceed with their suit only if they "purchased or sold the securities about which the alleged misrepresentations were made." *Lucid Motors*, 110 F.4th at 1186. To conclude otherwise would undermine the purchaser-seller rule, allowing a plaintiff to proceed with 10(b) scheme liability where they otherwise could not under a misrepresentation theory for the exact same liability imposing misrepresentation.[5]

Even if this Court assumes the non-application of the purchaser-seller rule,[6] the alleged conduct cannot meet the baseline requirement to state a scheme claim that Defendants committed a "manipulative or deceptive act." *See S.E.C. v. Daifotis*, No. C 11-00137 WHA, 2011 WL 2183314, at *9 (N.D. Cal. June 6, 2011), *modified on reconsideration*, No. C 11-00137 WHA, 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011) (challenged conduct must involve a "sham" or "inherently deceptive" transactions.); *see also S.E.C. v. Lucent Techs., Inc.*, 610 F.Supp.2d 342, 360 (D.N.J. 2009). The action of submitting to regulatory antitrust approval was required by statute and contract, [Compl. ¶ 46], as was the Form 8-K disclosure. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 528 n.6 (1974). Conduct that is merely consistent with "the normal course of business" and is not "inherently deceptive" cannot form the basis of scheme liability. *Simpson v. AOL Time*

---

[4] Plaintiffs refer to this form in their factual allegation as a Form 8-K but then switch, with a singular reference, to "Form 10-K" in their claim section. [*Compare* Compl. ¶¶ 75, 134 *with* Compl. ¶ 179.] The Court construes the latter as "Form 8-K" consistent with the pleaded facts.

[5] In applying the *Lucid* statutory standing requirement, the Court is not dismissing the scheme claim simply because the 10(b) claim fails. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).

[6] The statutory standing analysis from *Lucid Motors* is different from Article III standing in that the latter may not be assumed for purposes of a 12(b)(6) analysis. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (explaining that courts may not exercise "hypothetical jurisdiction").

*Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006) (vacated on other grounds); *Daifotis*, 2011 WL 2183314, at *9.

### iii. Plaintiffs Fail to Sufficiently Plead a Section 18 Claim

On Sept. 25, 2024, the Court ordered supplemental briefing on Plaintiffs' Section 18 claim. [ECF No. 28.] The parties filed their briefs, [ECF Nos. 30–32], and the Court finds it suitable to resolve this issue on the papers. *See* LR 7.1(d)(1).

First is the question of applicable pleading standards. Because Section 18 claims are rooted in fraud, they are subject to the heightened pleading standards of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be "grounded in fraud" . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"). Additionally, the Private Securities Litigation Reform Act requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). There appears to be some debate as to whether Section 18 is subject to the exacting pleading standard imposed by the PSLRA. *Compare Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 408 (2d Cir. 2016) (Section 18(a) does not require a particular state of mind) *with Kelley v. Rambus, Inc.,* No. 07-cv-1238, 2008 WL 5170598, at *3 (N.D. Cal. Dec. 9, 2008) (applying the PSLRA to Section 18 claims), *aff'd*, 384 F. App'x 570 (9th Cir. 2010). Nevertheless, the Court need not resolve this matter as it proceeds under the Rule 8(b) plausibility standard and the heightened pleading standards of Rule 9(b) to resolve the Section 18 claim.

The next issue is whether the statutory standing requirement from *Lucid Motors* applies to Section 18. The Court understands this to be an issue of first impression and concludes that the purchaser-seller rule does not apply. *Lucid Motors* focused on misstatements/omissions under the judge-created 10(b) framework. 110 F.4th at 1184. The Ninth Circuit, relying on *Blue Chip Stamps*, demanded a restrictive vision of statutory standing precisely because 10(b) liability is judicially fashioned. *See id.* at 1184–85. In

contrast, Section 18 contains an express right of action. *See Beebe v. Pac. Realty Tr.*, 99 F.R.D. 60, 70 (D. Or. 1983) (citing *Ross v. A. H. Robins Co.*, 607 F.2d 545, 556 (2d Cir. 1979) ("The purpose of § 18(a) is to further the particular objective of encouraging reliance upon records filed with the SEC by expressly authorizing damage actions against those making false filings.").

Defendants make the policy argument that the purchaser-seller rule should apply to Section 18 since to do otherwise would unwisely expand liability under the Exchange Act. [ECF No. 32 at 12–13.] But "[i]t is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). And the text of Section 18 forecloses Defendant's argument: "any person" who makes a statement filed pursuant to the Exchange Act may face liability for materially false or misleading statements by a person who, relying on that statement, "purchased or sold a security at a price which was affected by such statement." 15 U.S.C. § 78r.

Whether or not the purchaser-seller rule applies, Plaintiffs still fail to state a claim. Plaintiffs' Section 18 claim is built on only one set of statements: those found in MaxLinear's June 28, 2023 Form 8-K filed with the SEC. [Compl. ¶¶ 198–205; ECF No. 24-7 at 3.] To state a Section 18 claim, Plaintiffs are required to plead that (1) "Defendant[s] made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made [or falsity];" (2) in a document filed pursuant to the Exchange Act; (3) Plaintiffs actually relied on the false statement; and (4) suffered loss as a result. *Oaktree Cap. Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1081 (D. Nev. 2013) (quoting *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1171 (10th Cir. 2006)); *see* 15 U.S.C. § 78r(a).

To proceed under Section 18, a plaintiff must plead actual reliance. *Howard v. Everex Sys.*, 228 F.3d 1057, 1063 (9th Cir. 2000). In support of that element, Plaintiff alleges the following:

> An investment professional working on behalf of Plaintiffs read and actually relied upon information contained in the June 28, 2023 Form 8-K in making each purchase of Silicon Motion ADSs.

[Compl. ¶ 200.]

Citing *Suprema Specialties, Inc. Securities Litigation*, Defendants argue that this claim fails to sufficiently allege reliance under the plausibility pleading standard. 438 F.3d 256 (3d Cir. 2006). In that case, the Third Circuit dismissed a Section 18 claim where plaintiffs alleged that they "received, reviewed, actually read, and relied upon" various Exchange Act filings, including 10-Ks. *Id.* at 284. According to the Third Circuit, "[p]laintiffs failed . . . to plead facts probative of their actual reliance on any specific false statements contained in those filings." *Id.* Perhaps the Form 8-K pointed to by Plaintiffs contains fewer statements overall versus the set of materials at issue in *Suprema Specialties*, but the underlying reasoning applies in equal force. Plaintiffs do not identify which false or misleading statement in the 8-K that they (through an investment professional) actually relied on.

Compounding the actual reliance problem, the Form 8-K contains statements that cannot be alleged to be untruthful because they are literally true. *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 835 (N.D. Cal. 2014) ("[B]ecause Defendants' statements are literally true . . . the court finds these statements, as alleged, would not plausibly mislead a reasonable investor."). Consider the following statement from the Form 8-K:

> MaxLinear and Silicon Motion previously filed under the HSR Act, and the HSR Waiting Period expired at 11:59 p.m. ET on June 27, 2022.

[*See* Compl. ¶¶ 198–205; ECF No. 24-7 at 3.] There is no question that MaxLinear and SIMO previously filed under the HSR Act. [*See* Compl. ¶ 74.] The same applies to the statement that the merger was "conditioned upon . . . the expiration or termination of the [regulatory] waiting period": the governing agreement makes that point indisputable. [*Id.* ¶¶ 75, 133; *see* ECF No. 24-4 at 20 (§ 6.1(d)) (listing as a condition to consummation of

the merger that "[a]ny applicable waiting period, together with any extensions thereof, under the HSR Act shall have expired . . . .").]

At bottom, Plaintiffs have failed to plausibly plead reliance in support of their Section 18 claim. Many of the statements from the Form 8-K—included in the larger set of statements Plaintiffs could hypothetically rely on—cannot, as a matter of law, mislead anyone. As such, the Court dismisses Plaintiffs' Section 18 claim under Rule 12(b)(6).

### iv. The Court Declines to Rule on the Remaining Common Law and State Law Claims

The Court declines to exert supplemental jurisdiction over Plaintiffs' common law and state law claims based on 28 U.S.C. § 1367(c)(3).

### V. CONCLUSION

With respect to Plaintiffs' Section 10(b) and 20(a) claims under the Exchange Act, the Court is not aware of any relevant exceptions to the purchaser-seller rule. Because Plaintiffs did not hold MaxLinear's stock during the relevant period and the alleged misrepresentations were made about MaxLinear, the Court grants Defendants' motion to dismiss those claims for lack of statutory standing pursuant to Fed. R. Civ. P. 12(b)(6). The Court grants Defendants' motion to dismiss the Section 10(b) scheme claim on the same grounds, and in the alternative, for failure to state a claim. The Court likewise grants the motion to dismiss Plaintiffs' Section 18 claim for a failure to state a claim.

All claims are dismissed with leave to amend. Plaintiffs may file any amended complaint by January 17, 2025.

It is **SO ORDERED**.

Dated: January 2, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge